Argued and submitted August 10, affirmed December 21, 1981

BUSTER R. DeHART,
*Respondent,*
*v.*
STATE OF OREGON,
*Appellant.*

(No. 26981, CA A20458)

637 P2d 1311

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Fred E. Avera, II, Dallas, argued the cause for respondent. With him on the brief was Avera and Avera, Dallas.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals from an order granting defendant's petition for post-conviction relief on the basis of a finding that "[d]efendant was deprived of due process of law in connection with [his] trial in that he was not effectively represented by counsel."[1] We affirm.

Defendant was charged with 14 counts of cruelty to animals. ORS 167.850. He was acquitted on five counts that alleged he had starved five horses to death, but was convicted on nine counts that alleged he had caused nine other horses to suffer from malnutrition. Defendant's convictions were affirmed by this court without opinion. *State v. DeHart,* 42 Or App 837, 601 P2d 917 (1979), *rev den* 288 Or 519 (1980).

Thereafter, defendant filed a petition for post-conviction relief, which alleged in part:

"* * * * *

"(a) [Defendant] has been denied equal protection and due process of law as guaranteed by the United States and Oregon Constitutions in that he has been denied effective counsel at trial in that [defendant's] attorney failed to adequately prepare for and handle [defendant's] trial by failing or neglecting to contact or subpoena witnesses vital to [defendant's] defense, by failing or neglecting to assess, assemble and produce evidence vital to [defendant's] defense, by failing or neglecting to properly understand the nature and severity of the charges and evidence brought against [defendant] by the State of Oregon, and by failing or neglecting to request lesser included offenses or to except from the trial judge's failure to give such lesser included offense instructions."

In August, 1977, defendant took possession of 32 wild horses under an agreement with the Bureau of Land Management (BLM). The horses were emaciated and were

---

[1] The post-conviction court found:

"Defendant was deprived of due process of law in connection with the said trial in that he was not effectively represented by counsel. Specifically, defendant's counsel was provided with the names of several *potential witnesses who would have been helpful to the defense and who were available to testify at trial yet he failed to contact those witnesses and failed to subpoena them for trial. If the said witnesses had testified there is a substantial possibility that defendant would have been acquitted."

apparently suffering severe parasitic infection. Under the agreement, defendant was responsible for any necessary medical care. Defendant attempted to rid the horses of their parasites by mixing medicine with grain, but the animals would not eat the grain. They were then put to pasture, and hay was left in a feeder bunk. While the horses survived the first winter, one was found dead in April, 1978. The condition of the horses worsened during the next winter. Some of them stopped returning to the barn for their feed, and defendant was required to make deliveries of hay to the pasture. After receiving a complaint, a BLM officer visited defendant's property in December, 1978, and found eight of the horses were dead.

At trial the factual issues were cause of death, defendant's efforts to cure the horses of their parasites and the quality and quantity of defendant's pasture and supplementary feed. A veterinarian who performed an autopsy on one of the horses testified that the animals had died of malnutrition, that the parasitic infection he found was only secondary and that a parasitic infection by itself would not have caused death. He also testified that he had examined defendant's pasture and feed and that both were of poor quality and nutritionally inadequate. A BLM representative testified that defendant's pasture was overgrazed and his feed of poor quality. Other witnesses testified to defendant's unsuccessful efforts at deworming the horses. The only witnesses called by the defense were the defendant and his wife. Defendant testified that the cause of death was the parasitic infection and that his pasture and feed were of good quality.

Prior to trial, defendant suggested to his attorney the names of several witnesses he thought could provide testimony favorable to the defense. Specifically, he suggested his own veterinarian, who testified at the post-conviction hearing that, contrary to the opinion of the state's expert, a severe parasitic infection by itself can cause death, that there is no difference in appearance between a horse suffering from malnutrition and one suffering from a severe parasitic infection, that defendant's efforts at deworming the horses were reasonable under the circumstances, and that he would have so testified at defendant's trial if he had been subpoenaed.

Defendant also suggested to his counsel the names of three other witnesses, all of whom stated at the post-conviction hearing that they could have, and would have if called, testified from personal observation that defendant's pasture was satisfactory. Additionally, he suggested that his feed be chemically analyzed to determine its protein content. Defendant's retained counsel declined to follow any of those suggestions, assuring defendant that the state had no case against him and that the suggested witnesses and feed analysis were unnecessary. After his conviction defendant himself had his feed analyzed. The analysis, submitted as evidence at the post-conviction hearing, showed a protein content adequate to supply 150 per cent of the recommended allowance.

The failure of defendant's trial counsel to interview the suggested witnesses or to have the feed analyzed to determine whether such testimony or evidence would be helpful to the defense reflects, not a mere error in professional judgment, but a complete failure to exercise professional judgment. Counsel effectively defaulted. Under these circumstances, defendant was denied effective assistance of counsel. *Rook v. Cupp,* 18 Or App 608, 526 P2d 605 (1974); *see Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981); *Turner v. Cupp,* 1 Or App 596, 465 P2d 249 (1970). Defendant was prejudiced by that denial. His and his wife's testimony were likely to be viewed as self-serving. The suggested corroborating testimony would not have been merely cumulative, and, as the post-conviction court found, it might well have produced a reasonable doubt in the minds of the jurors, which could have resulted in a different verdict.

Affirmed.